UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


KATHERINE MAXEY,

     Plaintiff,

v.                                                                  Case No. 8:21-cv-258-CPT

KILOLO KIJAKAZI,
Acting Commissioner of the Social
Security Administration,[1]

     Defendant.
_____/


**O R D E R**

     The Plaintiff seeks judicial review of the Commissioner's denial of her claim for

Social Security Income (SSI) and Disability Insurance Benefits (DIB).  For the reasons

discussed below, the Commissioner's decision is affirmed.

I.

     The Plaintiff was born in 1967, has a high school education, and has past

relevant work experience as a receptionist.  (R. 20, 87, 327).  In December 2017, the

Plaintiff applied for SSI and DIB, alleging disability as of October 2016 due to multiple

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration (SSA) on
July 9, 2021, replacing the former Commissioner, Andrew M. Saul.  Pursuant to Federal Rule of Civil
Procedure 25(d), Ms. Kijakazi is substituted for Mr. Saul as the Defendant in this suit.

medical conditions.[2]  (R. 87–88, 103–04).  The SSA denied the Plaintiff's application both initially and on reconsideration.  (R. 101, 118, 138, 156).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in July 2019.  (R. 44–60, 185–86).  As a result of the evidence adduced at that proceeding, the ALJ directed that a consultative examination (CE) of the Plaintiff be performed and he then convened a supplemental hearing in May 2020.  (R. 10, 32–42).  The Plaintiff was represented by counsel at both proceedings and testified on her own behalf.  (R. 32, 35–37, 44, 46–60).  A vocational expert (VE) also testified at the latter hearing.  (R. 37–42).

In a decision issued in September 2020, the ALJ determined that the Plaintiff (1) had not engaged in any substantial gainful activity since her alleged onset date in October 2016; (2) had the severe impairments of a hernia, stenosis, lumbago, spondylosis, cervicalgia, post-laminectomy syndrome, Klippel-Feil syndrome, chronic pain syndrome, degenerative disc disease, radiculopathy/neuralgia/neuritis, lumbar disc protrusion, other intervertebral disc displacement, and cervical herniated nucleus pulposus; (3) did not, however, have an impairment or combination of impairments

---

[2] These conditions included anxiety, sinusitis, migraines, depression, fibromyalgia, sleep apnea, spinal tenosis, high cholesterol, memory loss, concentration loss, cervical herniations, mid-back herniation, failed lumbar surgery, other bursitis disorder, high blood pressure, human papillomavirus virus, failed cervical spine surgery, "agrophobia" with panic attacks, attention or concentration deficit, attention deficit hyperactivity disorder, other episodic mood disorder, chronic pain due to trauma, "cyatic" pain and numbness, pain in the joints and multiple areas, atrophy from permanent spinal cord damage, confinement to the bed for most of the time, loss of bowels and bladder incontinence, "joint involving . . . right and left [hands]," pain in joints involving lower leg and both shoulders, other specified diffuse diseases of connective tissue, and degeneration of the discs in the cervical, lumbar, and "[t]hroax" spine.  (R. 88, 104).

that met or medically equaled the severity of any of the listings;[3] (4) had the residual functional capacity (RFC) to perform a reduced range of light work subject to certain physical and environmental limitations;[4] and (5) based on the VE's testimony, could not engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy.  (R. 12–23).   In light of these findings, the ALJ concluded that the Plaintiff was not disabled.  (R. 22–23).

The Appeals Council denied the Plaintiff's request for review.  (R. 1–4). Accordingly, the ALJ's decision became the final decision of the Commissioner.

## II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a),

---

[3] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits.  *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[4] These limitations included that the Plaintiff could lift up to fifty pounds occasionally and carry up to twenty pounds occasionally; could stand and/or walk for six hours in an eight-hour workday; could sit for six hours in an eight-hour workday; required a sit/stand option, with an alternating interval of four hours; could occasionally push or pull with her upper extremities; could occasionally reach to shoulder level and waist to chest with both arms; could occasionally handle, finger, and feel with both hands; could occasionally climb ramps, stairs, ladders, and scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could occasionally work around high exposed places and moving mechanical parts; and could tolerate occasional exposure to humidity and wetness, pulmonary irritants, extreme cold, extreme heat, and vibrations.  (R. 15–16).

416.905(a).[5]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process."  *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[6]  Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience.  *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).  Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  In the end, "'the overall burden of demonstrating the existence of a disability . . . rests

---

[5] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[6] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence." *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). While a court will defer to the Commissioner's factual findings, it will not defer to her legal conclusions. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff raises four challenges on appeal: (1) the ALJ erred at step four by improperly considering the Plaintiff's subjective complaints of pain and other symptoms; (2) the ALJ erred at step five by relying on evidence from the VE; (3) the ALJ also erred at step five by failing to comply with Social Security Ruling (SSR) 00-

5

4p; and (4) the ALJ did not fulfill his obligation to develop a full and fair record.  (Doc. 29).[7]  After careful review of the parties' submissions and the record, the Court finds that the Plaintiff's challenges lack merit.

A.

As noted above, the ALJ's task at step four is to determine the claimant's RFC and her ability to perform her past relevant work.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4)(iv), 416.920(a)(4)(iv), 416.945(a)(4)(iv).  To do so, an ALJ must decide in light of all the pertinent evidence before him what a claimant can do in a work setting despite any physical or mental limitations caused by her impairments and related symptoms.  *Id*. §§ 404.1545(a)(1), 416.945(a)(1).  In making this assessment, the ALJ must consider the medical opinions of record, along with all the claimant's medically determinable impairments and the total limiting effects of each.  *Id*. §§ 404.1520(e), 404.1545(a)(2), 416.920(e), 416.945(a)(2); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

The evaluation of a claimant's subjective complaints is governed by the Eleventh Circuit's "pain standard."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively

---

[7] The Court has reordered the Plaintiff's challenges for purposes of its analysis.

determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they restrict her capacity to work. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment (other than medication) the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations due to pain or other symptoms. *Id.*

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). The ALJ, however, "need not cite particular phrases or formulations" in performing this assessment, so long as the reviewing court can be satisfied that the ALJ satisfied his duty to consider a claimant's "medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also*

7

*Stowe v. Soc. Sec. Admin., Comm'r*, ___ F. App'x ___, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (stating that if an ALJ does not identify specific and adequate reasons for rejecting a claimant's testimony about pain, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)).  A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is buttressed by substantial evidence.  *Foote*, 67 F.3d at 1562 (citation omitted).

In this case, the Plaintiff testified at the first hearing that she was unable to work due to, among other things, pain in her neck, mid-back, and lower back, as well as numbness in her hands.  (R. 16, 47).  She also testified that while her medication regime "[took] the edge off[,]" it did not wholly resolve her symptoms, as demonstrated by the fact that she had "done nothing in six years[,]" including not going out or seeing her family.  (R. 16, 48).  She additionally reported experiencing fatigue during the day but acknowledged that she did leave the house when she felt well enough to do so.  (R. 16–17, 51–52).

The ALJ referenced these subjective complaints in his decision, along with the Eleventh Circuit's pain standard and his obligation to account for all symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence."  (R. 17) (citing 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017)).  The ALJ also rendered the following express credibility determination regarding the Plaintiff's subjective complaints:

8

> [T]he [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.*

In support of this assessment, the ALJ engaged in an extensive summary of the objective medical findings in the record pertaining to the Plaintiff's physical and mental health, including evidence that she was alert and oriented and that her treatment had been conservative and routine.  (R. 17–19) (citations omitted).  The ALJ further noted that the majority of the Plaintiff's mental status examinations were largely unremarkable and revealed that she had a normal mood and affect, appropriate thought content, as well as good insight and judgment.  (R. 19) (citations omitted).

The Plaintiff now contends that the ALJ erred by not considering the impact of her pain medications on her mental health.    (Doc. 29 at 18–20).  To bolster this contention, the Plaintiff points to the notes of a provider who conducted a physical consultative exam and who observed that she appeared to be experiencing medication side effects.  *Id*. at 19 (citation omitted).  The Plaintiff also adds in conclusory fashion that "several reports and questionnaires [she] completed" allude to medication side effects, including drowsiness and decreased mentation.  *Id*.  This claim of error does not survive scrutiny.

To start, the Plaintiff did not testify about such issues before the ALJ, nor does she show that she complained of medication side effects to her providers.  She also did

not cite side effects as a basis for her disability claim when she brought it.  These deficiencies alone significantly undermine the Plaintiff's first challenge.  *See Robinson v. Comm'r of Soc. Sec.*, 649 F. App'x 799, 802 (11th Cir. 2016) (per curiam) ("[W]hile [the claimant] testified to medication side effects and reported medication side effects once, he also repeatedly declined to report any medication side effects.  Therefore, the ALJ did not fail to consider [the claimant]'s medication side effects. . . ."); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (per curiam) (affirming the ALJ's determination regarding the claimant's side effects where the claimant did not disclose concerns about such symptoms to the doctors who examined her).

Moreover, although the ALJ did not specifically identify the Plaintiff's alleged side effects in his decision, the ALJ did attest that he "considered the record as a whole, including the [Plaintiff]'s statements regarding the intensity, persistence, and limiting effects of [her alleged] symptoms."  *See* (R. 17).  He also stated that medication side effects were one of the factors relevant to his assessment of the Plaintiff's subjective complaints.  *See id.* (citing 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304); *see also Robinson*, 802 F. App'x at 802 (finding that an ALJ met her duty to discuss side effects where she set forth in her decision that she considered all of the claimant's symptoms as required by the applicable agency regulations and rulings); *Morrison v. Kijakazi*, 2022 WL 970201, at *7 (M.D. Fla. Mar. 31, 2022) (determining that an ALJ adequately accounted for a claimant's symptoms where she advised she assessed all of the plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other

portions of the record) (citation omitted).  Given these circumstances, the Court is satisfied that the ALJ took into account the entirety of the Plaintiff's medical condition in rendering his determination regarding her reported symptoms, including her medication side effects.  *Chatham*, 764 F. App'x at 868; *Dyer*, 395 F.3d at 1211 (noting that an ALJ is not required to delineate "every piece of evidence" in his decision so long as a reviewing court is satisfied that the ALJ evaluated the whole of the claimant's medical condition).

To the extent the Plaintiff asks that the Court re-weigh the record evidence pertaining to her subjective complaints, the Court declines to do so.  *Carter*, 726 F. App'x at 739 (stating that a court "may not decide the facts anew" or "re-weigh the evidence").  Nor is the Court persuaded by the Plaintiff's reference to portions of the record which she believes substantiate her reported symptoms.  As the Eleventh Circuit has explained, "[u]nder a substantial evidence standard of review, [a claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion."  *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).  The Plaintiff has not done so here.

For these reasons, as well as those set forth by the Commissioner in her memorandum, the Plaintiff's first challenge fails.

B.

Turning to the Plaintiff's second challenge, the Regulations provide that once an ALJ has made his RFC finding at step four, he may—but need not—employ a VE to address the other step four issue of whether the claimant can engage in her past relevant work. *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005) (per curiam).  If the ALJ utilizes a VE, the ALJ will pose hypothetical questions to the VE which are premised upon someone with the limitations the ALJ has determined the claimant to have. *Phillips*, 357 F.3d at 1239–40.  The ALJ must make sure, however, to present an accurate hypothetical to the VE that accounts for all the claimant's restrictions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citation omitted).  The ALJ may likewise use a VE at step five in assessing whether the claimant is capable of performing other jobs that are available in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. *Phillips*, 357 F.3d at 1239–40; *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988).

Pertinent to the Plaintiff's second challenge here, the ALJ posed a hypothetical to the VE at the supplemental hearing about whether there were sufficient positions in the United States for a person of similar age, education, and work experience as the Plaintiff, who—among other limitations—could "stand and/or walk for six hours in an [eight]-hour day[, could] sit for six hours in an eight-hour day[, and] require[d] a sit/stand option with an alternating interval of four hours." (R. 37–38).  In response, the VE identified three occupations involving light work that such an individual could

12

perform—namely, usher, school bus monitor, and children's attendant. (R. 38). The VE further stated that her testimony was consistent with the Dictionary of Occupational Titles (DOT).[8] (R. 39).

The Plaintiff's attorney did not object to the hypothetical the ALJ posed to the VE, nor did he ask for any clarification on the matter. (R. 39–42). Instead, the Plaintiff's lawyer questioned the VE's reliance on a similar hypothetical, only amending it to add certain mental limitations and to reduce the time the individual could spend sitting, standing, and walking. (R. 39–40).

Following the supplemental hearing, the ALJ requested that another VE provide responses to vocational interrogatories which included a hypothetical that was identical in all material respects to the one described above. (R. 473–76). The responses the ALJ received from the second VE were the same as the ones he obtained from the first VE, except that the three occupations the latter VE designated were usher, school bus monitor, and counter clerk. (R. 475).

Consistent with this VE evidence and as mentioned earlier, the ALJ found in his decision that the Plaintiff had the RFC to engage in light work subject to certain restrictions, including that she could "stand and/or walk for [six] hours in an [eight]-hour workday[,] . . . sit for [six] hours in an [eight]-hour workday[,] . . . [and] require[d] a sit/stand option, with an alternating interval of four hours." (R. 16). The ALJ also

---

[8] The DOT is "an extensive compendium of data [compiled by the Department of Labor] about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.

adopted the opinion of the second VE that the Plaintiff could perform the jobs of usher, school bus monitor, and counter clerk, all of which—the ALJ determined per the VE—existed in significant numbers in the national economy.  (R. 21).

The Plaintiff now argues that the ALJ's RFC determination and his hypothetical to the VEs were "vague" and "incomplete" because they could be interpreted in a manner that creates a conflict between the stand/walk limitation and the sit/stand option.  (Doc. 29 at 5–7).  In particular, the Plaintiff asserts that the ALJ's hypothetical could be construed to mean that the Plaintiff had to "be on her feet the entire eight-hour day," calculated by totaling the findings that she was able to stand for six hours and walk for six hours, which would preclude a sit/stand option at four-hour intervals.  *Id.*

The Plaintiff's argument is flawed for several reasons.  As an initial matter, it is well established that a claimant's RFC represents the *most* that she can do.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Further, the SSR describing the policies and policy interpretations for RFC assessments state that each function within an RFC must be considered separately.  *See*, *e.g.*, SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("Each function must be considered separately (e.g., the individual can walk for [five] out of [eight] hours and stand for [six] out of [eight] hours) . . . .") (internal quotation marks omitted).  Against this backdrop, a commonsense construction of the ALJ's RFC determination and his attendant hypothetical is that the individual referenced in both could engage in any combination of standing and walking and could choose to alternate between sitting and standing, with the limitation that she could stand for a

maximum of six hours, could walk for a maximum of six hours, and had the option of alternating sitting and standing approximately every four hours.

This interpretation of the RFC and accompanying hypothetical is buttressed by the fact that the VEs did not indicate that they misunderstood the contours of the above restrictions in addressing the ALJ's queries.  Quite the opposite.  Both VEs described the positions available based upon the ALJ's fact pattern without asking for any clarification.  (R. 37–38, 474–75); *see also Thomas v. Comm'r of Soc. Sec.*, 2020 WL 5810219, at *4 (M.D. Fla. Sept. 30, 2020) (observing that courts in the Eleventh Circuit "routinely reject the argument that [a] limitation is vague where . . . there is no indication that either the ALJ or the VE misunderstood its plain meaning") (collecting cases).  That the Plaintiff failed to object to the parameters of the ALJ's hypothetical during the supplemental hearing further bolsters this conclusion.[9]

The Plaintiff relatedly contends that the requirements of the jobs identified by the ALJ conflict with the sit/stand option.  By way of example, the Plaintiff posits that a school bus monitor "cannot stand and walk as needed" and that neither an usher nor a counter attendant can "sit at will."  (Doc. 29 at 6–7).  This contention is flawed as well.

---

[9] The Court notes that there is some case authority in this District providing that a claimant who does not raise an argument at the ALJ hearing is foreclosed from pursuing that contention on appeal.  *See, e.g., Gray v. Comm'r of Soc. Sec.*, 2019 WL 3934441, at *6 n.10 (M.D. Fla. Aug. 20, 2019) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)); *Crider v. Comm'r of Soc. Sec.*, 2018 WL 3628847, at *5 (M.D. Fla. June 12, 2018) (citing *Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001), *aff'd*, 31 F. App'x 202 (11th Cir. 2001)).

To begin, the Plaintiff's claim regarding the strictures of the three occupations is predicated upon the speculative statements of her lawyer.  Such statements—unaccompanied, as they are here, by any citations to authority—do not constitute evidence.  *Williams v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2022 WL 791711, at *6 (11th Cir. Mar. 16, 2022) (noting that "'[s]tatements by counsel in briefs are not evidence'") (quoting *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980)).[10]

The Plaintiff's argument also misapprehends the ALJ's RFC determination. Contrary to the Plaintiff's assertion, the ALJ did not find that she must be able to "stand and walk as needed" and "sit at will."  *See* (R. 15–16).  It is therefore irrelevant whether the three identified positions possess such requirements.

In sum, the Plaintiff has not met her burden of showing that she cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  As a result, her second challenge fails.

## C.

With respect to the Plaintiff's third challenge, it is now settled law that pursuant to SSR 00-4p, an ALJ is required to identify and resolve any apparent conflict between data in the DOT and testimony offered by a VE.  *Washington*, 906 F.3d at 1362; *see also* SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000).  As the Eleventh Circuit noted in *Washington*, "this duty is not fulfilled simply by taking the VE at [her] word that [her]

---

[10]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the newly established Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

testimony comports with the DOT." 906 F.3d at 1362. Rather, the ALJ has an "affirmative obligation" to discern and reconcile any such discrepancies and to set forth his reasons for doing so. *Id.*

An "apparent conflict" under SSR 00-4p is "more than just a conflict that is made apparent by the express testimony of the VE." *Id.* at 1365. Instead, "[a]t a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* "Apparent" in this context is "taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT." *Id.* at 1366.

The ALJ's obligation to take notice of and to resolve apparent inconsistencies between the DOT and VE testimony exists both during and after the hearing and does not depend on whether they are raised by a party. *Id.* at 1363. "The failure to properly discharge this duty means that the ALJ's decision is not supported by substantial evidence." *Id.* at 1362.

In this case, as noted earlier, the ALJ concluded at step five that the Plaintiff could engage in the three occupations described by the second VE. (R. 21–22). In doing so, the ALJ stated that, under SSR 00-4p, the VE's interrogatory responses were "consistent with the information contained in the [DOT] and its companion publication." (R. 21) (citation omitted).

Citing SSR 00-4p, the Plaintiff now argues that the DOT's descriptions for each of the designated positions are outdated and that the VE and ALJ should have

17

consulted another Department of Labor database known as O*NET. (Doc. 29 at 9–15). This contention is unavailing.

As a threshold matter, the Plaintiff does not show that SSR 00-4p even applies to her claim of error. That ruling, as discussed above, mandates only that an ALJ identify and resolve any apparent conflict between the DOT and VE testimony. *Washington*, 906 F.3d at 1362; SSR 00-4p, 2000 WL 1898704, at *1. The Plaintiff, however, appears to ground her argument on alleged discrepancies between the VE's opinion and O*NET—not the DOT—without providing any authority demonstrating that *Washington* extends to such conflicts.

The Plaintiff's failure to properly buttress her contention is all the more notable given the Eleventh Circuit recent decision in *Tisdale v. Soc. Sec. Admin., Comm'r*, 806 F. App'x 704 (11th Cir. 2020) (per curiam). In *Tisdale*, the court rejected the claimant's assertion that the VE's opinion in that case should have been "disregarded because the [VE] relied on job listings in the . . . [DOT,]" instead of looking to "the more recently updated information available on the Department's O*Net." *Id.* at 711. In support of this ruling, the Eleventh Circuit reasoned:

> [The R]egulations provide that, in determining whether work that the claimant can do exists in significant numbers in the national economy, the Commissioner will take administrative notice of reliable information from various governmental and other publications. The [R]egulations specifically state that the agency will take notice of the DOT. The [R]egulations do not mention O*Net as a source of reliable data or require the agency to compare data from the DOT to O*Net data. On the other hand, the ALJ *was* required to (and did) consider the DOT in conjunction with the [VE's] testimony.

*Id.* (internal quotation marks omitted) (citing 20 C.F.R. § 416.966(d); SSR 00-4p, 2000 WL 1898704, at *1; *Washington*, 906 F.3d at 1356).  The Plaintiff does not reference *Tisdale* in her memorandum, much less demonstrate how it is not controlling here.

To the extent that the Plaintiff's challenge survives *Tisdale*, she alternatively avers that in contrast to the VE's testimony, the counter clerk job position no longer exists and accordingly should not have been used by the ALJ as a basis for his decision. (Doc. 29 at 13–14).[11]  There are a number of issues with this argument.

First, it is predicated in part upon the statements of counsel, *id.*, which—as explained previously—do not constitute evidence, *Williams*, 2022 WL 791711, at *7. Second, as argued by the Commissioner, the VE—not the Plaintiff or her attorney—is considered the expert on matters such as the number of jobs that are present in the United States.  *See* 20 C.F.R. §§ 404.1566(e), 416.966(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a [VE] or other specialist.").  Importantly, the Plaintiff does not dispute the VE's qualifications to render such an opinion, nor does it seem she could validly do so.  In fact, the VE's resume indicates that he is well qualified, with over thirty years of experience in vocational rehabilitation services and a certification in, among other areas, vocational evaluation.  (R. 446–48).

---

[11] Generally speaking, the counter clerk occupation involves, among other things, photo printing and film processing.  DOT # 249.366-101, 1991 WL 672323 (G.P.O. 4th ed., rev. 1991).

Third, notwithstanding the Plaintiff's efforts to portray the counter clerk occupation as being on the verge of extinction, it is worth highlighting that there is no baseline number of positions which must be present in the national economy to satisfy the step five inquiry. *See Atha v. Comm'r of Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015) ("This Court has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and [R]egulations.") (quoting *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987)). And at least one court in this District has upheld an ALJ's determination that there is a sufficient prevalence of counter clerk jobs. *See Campbell v. Comm'r of Soc. Sec.*, 2019 WL 6463983, at *3–4 (M.D. Fla. Dec. 2, 2019) (finding the ALJ did not err in concluding there were enough counter clerk positions despite the claimant's assertion that the job had been rendered virtually obsolete by modern technology).

Finally, even were the Plaintiff to prevail on her counter clerk argument, the ALJ identified two other occupations—usher and school monitor—that the Plaintiff could also engage in and that are present in adequate numbers in the United States.

For the above reasons, as well as those argued by the Commissioner in her memorandum, the Plaintiff's third challenge is without merit.

## D.

The Plaintiff's remaining challenge is that the ALJ did not properly develop the record with respect to the CE he directed be conducted after the first hearing. (Doc. 29 at 24–25). This challenge fails as well.

It is well settled that an ALJ has a basic and firmly-established duty to compile a full and fair record of the information pertinent to a claimant's application for benefits. *Washington*, 906 F.3d at 1364; *Ingram*, 496 F.3d at 1269. This duty, however, does not obligate an ALJ to order a CE whenever there is evidence that a claimant may suffer from an impairment. Instead, an ALJ "may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to support a determination or decision on [a] claim." 20 C.F.R. §§ 404.1519a, 416.919a. Consequently, an ALJ need not exercise his discretion in favor of obtaining a CE "as long as the record contains sufficient evidence for [him] to make an informed decision." *Ingram*, 496 F.3d at 1269 (citing *Doughty*, 245 F.3d at 1281); *see also Nation v. Barnhart*, 153 F. App'x 597, 598 (11th Cir. 2005) (per curiam) ("The ALJ is not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert testimony is not necessary for an informed decision.") (citations omitted).

A claimant requesting remand where an ALJ declined to secure a CE must demonstrate not only that the ALJ erred in doing so, but also that the claimant was harmed by the ALJ's decision on the matter. *See Mosley v. Comm'r of Soc. Sec.*, 633 F. App'x 739, 742 (11th Cir. 2015) (per curiam) (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). Only where "'the record reveals evidentiary gaps which result in unfairness or clear prejudice'" may a court find that remand is appropriate. *Id.* (quoting *Brown*, 44 F.3d at 935); *see also Goode*, 966 F.3d at 1280 (observing that "'[r]emand for further factual development of the record . . . is appropriate where the

record reveals evidentiary gaps which result in unfairness or clear prejudice'") (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).  Ultimately, the claimant bears the burden of proving she is disabled and must therefore produce adequate evidence to support her application.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

In this case, the consultative examiner—Dr. Charles Lebowitz—found as a result of his evaluation that the Plaintiff could not lift fifty pounds, could carry twenty pounds occasionally, could sit for a total of five hours in an eight-hour workday, could stand for a total of four hours in an eight-hour workday, and could walk for a total of three hours in an eight-hour workday.  (R. 1042–43).  He also determined that the Plaintiff could occasionally reach, handle, finger, and feel bilaterally, could occasionally climb and balance, could not stoop, kneel, crouch, or crawl, and could tolerate occasional exposure to unprotected heights, moving mechanical parts, humidity and wetness, pulmonary irritants, extreme cold, extreme heat, and vibrations.  (R. 1044–46).

In his decision, the ALJ discussed the above findings and concluded that Dr. Lebowitz's opinion was only partially persuasive because it did "not entirely" conform to the record as a whole.  (R. 18–19) (citations omitted).  To buttress this assessment, the ALJ noted that "Dr. Lebowitz's standing and walking limitations [were] not consistent with the majority of [the] physical examinations" of the Plaintiff, which reflected that she possessed "normal strength in [her] extremities."  (R. 18) (citations omitted).  The ALJ also observed that the record did not support Dr. Lebowitz's

finding that the Plaintiff was completely unable to stoop, kneel, crouch, and crawl, citing imaging that revealed "no more than moderate abnormalities[.]" (R. 19).  The ALJ did, however, credit Dr. Lebowitz's recommendation of a sit/stand option and incorporated it into his RFC determination "to account for the slightly reduced weakness in the [Plaintiff's] lower extremities."  *Id.*

The Plaintiff now argues that Dr. Lebowitz's evaluation was done "sloppily" and that the ALJ should therefore have either reached out to Dr. Lebowitz for clarification or utilized another consultative examiner, rather than partially discount Dr. Lebowitz's opinion.  (Doc. 29 at 24–25); (R. 18–19).   The problem with the Plaintiff's argument is that she fails to show that the record required further development in order for the ALJ to make an informed decision.  In particular, she does not point to any inconsistencies or gaps in the evidence that would trigger the ALJ's obligation to order yet another CE.  Nor does she identify in a meaningful way any unfairness or clear prejudice stemming from such purported evidentiary deficiencies.  Instead, she merely asserts in conclusory fashion that there is something "inherently" inequitable about the ALJ ordering a CE and "then disregarding [its] results."[12]  This argument is wholly insufficient and does not justify a remand.  *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014) (per curiam) (upholding the ALJ's decision not to order an additional medical examination where

---

[12] The Plaintiff's characterization of the ALJ as having "disregarded the results" of Dr. Lebowitz's examination is unfounded.  In fact, as alluded to above, the ALJ partially credited a portion of Dr. Lebowitz's assessments and provided a well-reasoned and well-grounded explanation—with citations to the relevant items in the record—for rejecting the rest.  *See* (R. 18–19).

the medical records, the materials from treating therapists, the assessments of agency physicians, and the claimant's own self-assessments provided an adequate basis for the challenged disability determination).

IV.

Based upon the foregoing, it is hereby ORDERED:

1.     The Commissioner's decision is affirmed.

2.     The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 28th day of November 2022.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record